# Silas Hartley, Appellant, *v.* Charles Millard and John T. Hull.

*Evidence—Fraud—Sale of land—Question for jury—Ejectment.*

In an action of ejectment plaintiff claimed title under unrecorded articles of agreement for the sale of the land from one Robinson.  Defendants claimed title under a sheriff's deed on a judgment against Robinson entered subsequent to the date of the agreement.  Plaintiff's testimony tended to show that the agreement was bona fide and for a valuable consideration, and that notice of it had been given at the sheriff's sale.  Defendants' testimony tended to show that after the date of the agreement Robinson had continued to occupy the land by his tenants, had insured the buildings in his own name, and had treated the property as his own, and that plaintiff had declared, three years after the articles were signed, that Robinson was the owner of the property.  *Held* that the case was for the jury.

Argued Feb. 25, 1895.   Appeal, No. 423, Jan. T., 1894, by plaintiff, from judgment of C. P. Lackawanna Co., Oct. T., 1888, No. 71, on verdict for defendants.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.   Affirmed.

Ejectment for a tract of land in Madison township.   Before SITTSER, J., specially presiding.

At the trial it appeared that the plaintiff claimed title under articles of sale dated April 7, 1883, from M. J. Robinson.  Defendants claimed under a sheriff's deed following the sale of the land under a judgment against M. J. Robinson.   The articles of sale were not recorded, but notice of them was given at the sheriff's sale.   Defendants claimed that if the articles had been executed on the day when they purported to be, they had been made for the purpose of defrauding Robinson's creditors.

They also claimed that they had really been made at a later date, and produced evidence to show that Robinson had retained possession of the land, leased it in his own name, insured it in his own name, and treated it in every way as his own. There was also testimony that plaintiff had declared, three years after the articles were signed, that Robinson was the owner of the property.

The counsel for the defendants proposed to prove by Mr. Gardner on the stand, that he met Silas Hartley subsequent to the date of the paper put in evidence by the plaintiff, that he then had a certain conversation with Mr. Hartley, in which he said to Hartley, in substance, you are covering up the store of Robinson at this present time, and there is nothing to get your pay out of but the farm, and there is the Tinker judgment ahead of you of a thousand dollars; that Hartley replied, yes, I know that, but, says he, Robinson has always asked twenty-seven hundred dollars for the farm, but Hartley says I think he will sell it now; he has put it in Loomis' hands to sell, and I think he will sell it for twenty-four hundred dollars, and if he does it will pay the Tinker judgment and me too. That this conversation arose from the fact that Hartley was at that time letting Robinson have more money. This is to be followed by proof of other acts and declarations by the plaintiff, Hartley and M. J. Robinson, for the purpose of showing fraud and collusion between M. J. Robinson and Silas Hartley in obtaining the title now set up for the purpose of cheating and defrauding creditors, etc.

The counsel for the plaintiff objected to the offer as immaterial, irrelevant and incompetent. That it is not sufficient to overcome the legal title of Hartley which is undisputed and which is in evidence, as it is at best a loose declaration, and is not sufficient of itself to be submitted to the jury as any evidence of fraud; that no acts or declarations offered to be proven are set forth other than the one mentioned; that there is no offer to prove that there were any creditors of M. J. Robinson at the time that the paper of April 7, 1893, was executed and the thousand dollars was paid by Hartley to Robinson, nor that Hartley knew that Robinson owed any debts, or had any creditors at the time, and therefore it is incompetent to prove any fraud upon the creditors of Robinson who were not creditors

at the time when the title was passed from Robinson to Hartley and the thousand dollars balance of purchase money was paid.

By the Court: The objections are overruled. I think it clearly evidence for the defence in support of their theory of the case. Exception for plaintiff and bill sealed. [13]

The counsel for the defendants propose to prove by the witness on the stand, Julius Young, in substance, that subsequent to April 7, 1883, M. J. Robinson, one of the parties to the agreement offered in evidence by the plaintiff, claimed to him to own this property in question; that he offered to sell it to the witness as his own property, and that no mention was made that Silas Hartley had any interest therein.

Counsel for plaintiff objected that any declarations of M. J. Robinson subsequent to the 7th of April cannot affect Silas Hartley, his grantee for a valuable consideration, unless made in his presence with his assent; there is no offer to connect Silas Hartley with the declaration or that he had any knowledge of the declaration, and that he cannot, therefore, be affected by it, and that the evidence is therefore incompetent and irrelevant.

By the Court: It goes to the credibility of M. J. Robinson as a witness. The objections are overruled and evidence admitted. Exception for plaintiff and bill sealed. [14]

Counsel for the defendants proposed to prove by the witness on the stand, Minerva Tinker, that in the year 1887, M. J. Robinson, whose deposition has been put in evidence, and the party to the agreement of April 7, 1883, came to the witness and claimed that he was the owner of the farm in question, situated in Moscow, told her that the only lien there was against it was this judgment of about nine hundred dollars; that he wanted her to purchase his property in Clifford, Susquehanna county, and if she would do it he would allow her on the purchase one half the judgment against the farm in Moscow as part of the purchase money, provided she would get the lien off that property.

Counsel for plaintiff objected to the offer, that any declarations of M. J. Robinson are incompetent for the same reasons heretofore urged against the admissions of the declarations of M. J. Robinson, subsequent to April 7, 1883.

By the Court: What is the date of these declarations?

By Mr. Watson: They are subsequent to April 7, 1883; they were in 1887.

By the Court: The objections are overruled and evidence admitted.

Exception for plaintiff and bill sealed. [15]

Whitman Fenyon was asked the question:

"Q. Did you know M. J. Robinson? A. I did. Q. State whether or not he had a talk with you about this judgment in question, and the farm in Moscow in question; if so, whether or not it was before or after the death of Mr. Tinker, and what was said. A. I think it was two or three months after Mr. Tinker died."

By Judge Jessup: Our objection covers this, your honor.

By the Court: Yes, sir, we will admit the evidence. Exception noted and bill sealed. [16]

M. A. Gardner was asked the question.

"Q. State whether or not you knew M. J. Robinson? A. I did. Q. Did you know him in 1883, in April? A. Yes, sir. Q. State whether or not you insured any property for him in Moscow? A. I insured some property on a farm in Moscow. Q. When did you do that? A. The 27th of April, 1887. Q. How did you insure it? A. I insured it as property of M. J. Robinson. Q. And no other?"

By Judge Jessup: This is subject to the same objection.

By the Court: Yes, sir. The objections are overruled and evidence admitted. Exception for plaintiff and bill is sealed. [17]

John P. Hull was asked the question:

"Q. State whether or not after you were appointed administrator, whether you saw Mr. Robinson about the payment of this judgment? A. I went to see him at his store in Clifford Corners, and asked him if he could pay this judgment, and he said he was not prepared."

By Judge Jessup: The plaintiff's exception covers this.

By the Court: Yes, sir, the objections are overruled and evidence admitted. Exception for plaintiff and bill sealed. [18]

The court charged in part as follows:

" Now this conveyance of Robinson to Hartley has never been recorded, as far as appears here, and the purchaser at that sheriff's sale would take a good title to this land, unless he had notice, before the purchase, of the existence of the conveyance to Hart-

ley.   On the part of the plaintiff in this case, they have called
a witness here, to show that notice was given at that sheriff's
sale of a claim of title to this land by Silas Hartley.   It seems
a notice of some kind was attached to the sheriff's return, and
it has been read in your hearing, and if you believe, from the
evidence in the case, that Mr. Hull, before he made this pur-
chase, at that sheriff's sale, had notice of the existence of this
title in Silas Hartley, [then we say to you that Silas Hartley
would have the right to recover in this case, provided you are
satisfied that this contract of April 7, 1883, was made at the
time it purports to be, and provided you do not find that it was
made for the purpose of hindering, delaying and defrauding
creditors of M. J. Robinson.] [1]

" Now, it is contended here, on the part of the defendants,
that this conveyance, this contract dated April 7, 1883, was
not made at the time it purports to be ; that it was made some-
time afterwards, and that it was made for the purpose of defraud-
ing the holders of this judgment of its lien upon the land.   If
this judgment was entered upon the 29th of August, 1883, if
M. J. Robinson was the owner of the land at that time, it be-
came a lien upon that land, and when this sheriff's sale took
place it passed the title to the purchasers at that sheriff's sale.
If, however, Robinson had conveyed his land to Silas Hartley
on the 7th of April, 1883, and Silas Hartley gave notice at the
time of the sheriff's sale to Mr. Hull, the purchaser, then we
say to you that Silas Hartley has shown a title to this land
which will enable him to recover in this case.   It matters not
when the note was given.   The note, as I have it here upon
notes, was given upon the 7th of April, 1883, upon which this
judgment was entered, the note for nine hundred and eighty-
four dollars, but it makes no difference if the note was given
upon the 7th of April, 1883, the judgment only became a lien
upon the land from the time of its entry, and unless this con-
veyance was made prior to the entry of the judgment, then the
judgment became a lien upon it, and a sale under that judg-
ment would pass the title to these purchasers.

" But the defendants go further ; they attack this paper and
insist that it was not made on the 7th of April, 1883, as it pur-
ports to be ; that whenever it was made, it was dated back, so
that it would appear to have been given and made prior to the

entry of the judgment, so that Silas Hartley would get a title to the land upon giving notice to the purchaser at that sale. . . .

" Mr. Hartley, one of the parties who knows when it was made, swears that it was made on the day of its date. The deposition of M. J. Robinson, the other party, has been read here, and he swears it was made on the day of its date. Now two men might be wicked enough and unscrupulous enough to make a paper and date it back for the purpose of defrauding another of his lien upon land. Now consider this question : if they did do it, what would be the natural circumstance that would surround a transaction of that kind? What would a man have to contend with if he attempted to make an instrument and date it back five years in relation to a conveyance of land? What would be the situation that would confront him when he announced to the public the fact that he had acquired the title to this land five years before any title had been made to him? Then again, if this transaction was made at the time it purports to be, if there had been a conveyance of this land to Silas Hartley on the 7th of April, 1883, what sort of a conveyance would the parties have been apt to have given? Was this land all paid for at the time? Is it usual for parties, under such circumstances, to take what is called a paid-up contract or a deed? Is it usual to record and acknowledge deeds at the time they are given? Now you are to consider all these circumstances in passing upon the credibility of the witnesses in this case. Do the stories they tell appear to be reasonable? Is the situation presented here just such a situation as we would have if this contract had been made and dated back five years, or is it the situation that we would expect if the contract had been made at the date it purports to have been made? The counsel for the defendant insist that it is strange, that if this contract was made at this time, that if this sale took place at this time, that a deed was not made, that it should have been acknowledged and recorded. They insist that it is strange that the grantor, M. J. Robinson, should be in possession of this land five years after the conveyance was made ; that he should be leasing it in his own name, insuring it in his own name, offering to sell it. On the other hand on the part of the plaintiff, the plaintiff himself and M. J. Robinson both swear that this paper was executed on the day of its date ; that they were cousins,

and that it was perfectly reasonable that he should take this paid-up contract and put it in his safe; that it was not at all unreasonable that he did not visit the farm any oftener, and make any stir about his ownership of it, because he left it in the hands of the man of whom he bought it, that of his cousin, M. J. Robinson, and that M. J. Robinson leased the property in his own name and looked after it for Silas Hartley. And witnesses have been called, upon the part of the plaintiff, who have testified that Silas Hartley, I think as far back as 1884 or '85 or '86, claimed to them to be the owner of this land. I cannot go over all the evidence, pro and con, in this case. You have heard it, and it is a matter for you to dispose of according to your best judgments."

Defendants' points were among others as follows :

" 1. If the jury find from all the evidence that Silas Hartley, the plaintiff, took the agreement of M. J. Robinson, dated April 7, 1883, as not a bona fide transaction, but that said paper was made for the purpose of cheating and defrauding creditors and especially for the purpose of defeating the enforcement and collection of the note given by M. J. Robinson to W. H. Leek, dated April 7, 1883, and the judgment entered thereon, the plaintiff cannot recover and the verdict should be for the defendants. *Answer*: This we affirm." [2]

" 2. If the jury find from all the evidence that said paper offered in evidence by the plaintiff, dated April 7, 1883, and upon which the plaintiff claims title to the land in question, was not made at the date it bears date but was made subsequently to the entry of said judgment or the giving of said note upon which the execution was issued and the land sold at sheriff's sale, and that said paper was dated back to the 7th of April, 1883, then the judgment was a lien upon the land when entered at the time of the sheriff's sale and the purchaser at sheriff's sale took title thereto and the plaintiff cannot recover. *Answer :* This we affirm, with this qualification: That asks us to say to you that this contract was made subsequently to the entry of said judgment or the giving of said note. We say to you, that if this contract was made subsequently to the entry of the judgment, then this point we affirm, but if it was made subsequent to the giving of the note, and before the entry of the judgment, then, of course, it would pass title to Silas Hartley, unless you

find that it was given for the purpose of hindering, delaying and defrauding the creditors of M. J. Robinson, especially the creditor Leek." [3]

" 3. If the jury find from all the evidence in the case that said paper was not made on the day it bears date, to wit: April 7, 1883, but was subsequently made and an agreement entered into between Silas Hartley and M. J. Robinson for the purpose of hindering, delaying and defrauding creditors, it was a fraudulent transaction and the plaintiff cannot recover. *Answer :* This we affirm." [4]

" 4. If the jury find from the evidence that the agreement dated the 7th of April, 1883, was kept a secret by Silas Hartley, and M. J. Robinson continued in possession of the farm in question, renting it, collected the rents, paid the taxes, insured the buildings in his own name and as his property, and in all respects managed the property the same as before said paper was given, it is evidence of fraud and collusion between Silas Hartley and M. J. Robinson. And if the jury find from all the evidence that said transaction between Silas Hartley and M. J. Robinson was fraudulent, Silas Hartley obtained no title to the land as against the then existing creditors of M. J. Robinson, and the contract is void as between Hartley and Robinson and the plaintiff cannot recover. *Answer :* This point we cannot fully affirm. We cannot say that such a contract, even if made for the purpose of hindering, delaying and defrauding creditors, would be void between Hartley and Robinson. On the other hand, such a contract is good and valid between the fraudulent parties, and only void as against creditors and the persons sought to be defrauded. Of course the fact, if you find it to be the fact, that Robinson continued in possession of the farm, and rented it, and collected the rents and paid the taxes, and insured the buildings, in his own name as his property, are facts to be considered by you on this question of fraud, and you can give them such weight as you think they are entitled to." [5]

" 5. If the jury find from the evidence that Silas Hartley, the plaintiff, knew at the time he took the agreement of April 7, 1883, that M. J. Robinson was about purchasing Leek's store of goods and was going in debt for part of the purchase money, and further find that Silas Hartley took said

agreement and kept it a secret in his safe, for the purpose of using it to defeat the collection of the note given by M. J. Robinson to W. H. Leek, as part of the purchase price of the goods, it was a fraud upon W. H. Leek, and his assignee of the note, and judgment upon which the land in question was sold, and the verdict should be for the defendant. *Answer:* Well, this we affirm, if you find the facts as stated. It is contended, however, by the counsel for the plaintiff, that there is no evidence that Silas Hartley knew that Robinson was going to run in debt for any portion of the goods." [6]

" 8. If the jury find from all the evidence produced in this case that the pretended purchase of the real estate by Hartley of Robinson was not bona fide, but was intended to be used to hinder and delay creditors, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* This we affirm, except that we do not say that it is a pretended purchase. It is for you to say whether this was a bona fide transaction on the part of Robinson and Hartley, or whether it was not, under the instructions which we have already given you." [7]

Plaintiff's points were among others as follows:

" 1. If the jury find from the evidence that the contract made between M. J. Robinson and Silas Hartley and delivered on the 7th of April, 1883, as testified to by them, and that notice of the title of Silas Hartley was given at the sheriff's sale before the property was sold to the defendant, Hull, then the plaintiff is entitled to recover. *Answer:* This we affirm, with this condition, that you find that Hull had notice at the sheriff's sale of the title of Silas Hartley, the plaintiff." [8]

" 2. That the notice required to be given of an unrecorded title is notice at any time before the sale, and it is not necessary that it should have been given before the entry of the judgment on which the sale took place. *Answer:* This we affirm. The notice must be a notice to the purchaser at the sale, and it is in time if given before the sale." [9]

" 3. That the evidence of M. J. Robinson is uncontradicted as to the execution and delivery of such contract. *Answer:* This we do not affirm. Evidence has been given here in the case, and you are to take it into consideration, take the whole of it and consider it, and it is for you to say whether it is uncontradicted or not." [10]

" 7. That there is no sufficient evidence in this case of fraud between M. J. Robinson and Silas Hartley to be submitted to the jury. *Answer :* This we do not affirm. On the other hand, we do submit these facts to you, and it is for you to say whether there was fraud or not between Robinson and Hartley." [11]

" 8. That the verdict of the jury should be for the plaintiff for the land claimed in the writ. *Answer :* This we do not affirm, but we submit the facts to you, and it is for you to say whether your verdict should be for the plaintiff or the defendant, under the instructions which we have given you." [12]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1–12) above instructions, quoting them ; (13–18) rulings on evidence, quoting the bill of exceptions.

*W. H. Jessup, Horace E. Hand* and *W. H. Jessup, Jr.*, with him, for appellant, cited on the question of fraud : Scott v. Heilager, 14 Pa. 238 ; Reehling v. Byers, 94 Pa. 316 ; Kitchen v. McCloskey, 150 Pa. 376 ; Kichling v. Loback, 125 Pa. 295 ; Wolf v. Kohr, 133 Pa. 13 ; Kintzel v. Kintzel, 133 Pa. 71 ; Confer v. McNeal, 74 Pa. 112 ; Price v. Junkin, 4 W. 85 ; Rogers v. Hall, 4 Watts, 361 ; Bredin v. Bredin, 3 Pa. 81 ; Lowe v. Dalrymple, 117 Pa. 564 ; Mead v. Conroe, 113 Pa. 220.

*W. W. Watson, C. B. Gardner* with him, for appellee, cited on the question of fraud : Lowe v. Dalrymple, 117 Pa. 564 ; McKee v. Gilchrist, 3 W. 230 ; Com. v. Eberle, 3 B. & R. 9 ; Reitenbach v. Reitenbach, 1 Rawle, 362 ; Kaine v. Weigley, 22 Pa. 179 ; Abbey v. Dewey, 25 Pa. 413 ; Rogers v. Hall, 4 W. 359 ; Confer v. McNeal, 74 Pa. 112 ; Brinks v. Heise, 84 Pa. 246 ; Hartman v. Diller & Groff, 62 Pa. 37 ; Souder v. Schechterly, 91 Pa. 83 ; Tyne's Case, Smith's Leading Cases, 114 ; Peterson v. Spear, 29 Pa. 478 ; Bredin v. Bredin, 3 Pa. 81 ; Deakers v. Temple and Barker, 41 Pa. 234 ; Snyder and Jacoby v. Berger, 18 W. N. C. 490.

PER CURIAM, April 8, 1895 :

This case depended on questions of fact which were fairly submitted to the jury with substantially correct and adequate

instructions.  The result was a verdict for defendants which necessarily implies a finding of the controlling facts in their favor.

The subject of complaint, in the first specification, is part of the learned judge's charge wherein he instructed the jury that plaintiff " would have a right to recover in this case provided you are satisfied this contract of April 7, 1883, was made at the time it purports to be, and you do not find that it was made for the purpose of hindering, delaying and defrauding creditors of M. J. Robinson."  Both parties recognized Robinson as the common source of the title in controversy.  The questions thus referred to by the court were clearly presented by the testimony and rightly submitted to the jury.  The next six specifications complain of the court's answers to defendants' 1st, 2d, 3d, 4th, 5th, and 8th points for charge.  The eighth to the twelfth, inclusive, allege error in the answers to plaintiff's 1st, 2d, 3d, 7th, and 8th points; and the last four specifications complain of the admission of the testimony therein referred to.  Our examination of the record with special reference to these specifications has not convinced us that any of them should be sustained; nor do we think that either of them requires further comment.  We find no error in the record that would justify a reversal of a judgment entered, as this was, on a verdict which appears to have been warranted by the evidence and approved by the court below.

Judgment affirmed.